## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYE C. NEWTON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 10-1151-SLR |
| | ) |
| PERRY PHELPS, | ) |
| Warden, and JOSEPH R. | ) |
| BIDEN, III, Attorney | ) |
| General of the State of | ) |
| Delaware, | ) |
| | ) |
| Respondents. | ) |

Sye C. Newton. Pro se petitioner.

James T. Wakley, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

**MEMORANDUM OPINION**

May 8 , 2013
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

Presently before the court is petitioner Sye C. Newton's ("petitioner") application

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1) Petitioner is a

Delaware inmate in custody at the James T. Vaughn Correctional Center in Wilmington,

Delaware. For the reasons that follow, the court will dismiss his application.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts of petitioner's case are as follows:

> On May 14, 2008, both [petitioner] and the victim, Kalvin Peterson, were inmates
> at the Howard R. Young Correctional Facility in Wilmington. Shortly before noon,
> during a recreation period when inmates are allowed out of their cells, [petitioner]
> took Peterson hostage. Peterson was bound and gagged in [petitioner's] cell.
> [Petitioner] held a razor to Peterson's neck. Over the course of the next five
> hours, [petitioner] made various demands of correctional officials. During that
> course of time, Peterson sustained a cut to his shoulder, which required several
> stitches to close. The stand-off ended when guards threw a stun grenade into
> [petioner's] cell, rushed in, and took him into custody.

*Newton v. State*, 991 A.2d 18 (Table), 2010 WL 922727, at *1 (Del. 2010). In June

2008, petitioner was indicted on charges of first degree kidnaping, possession of a

deadly weapon during the commission of a felony, and assault in a detention facility.

(D.I. 21 at 1)

In January 2009, petitioner moved to represent himself at trial, and the trial court

granted this request. *Id.* at 2. A two-day jury trial was held in February 2009, and the

jury convicted petitioner on all charges. The trial court sentenced him to an aggregate

of six years of incarceration. The Delaware Supreme Court affirmed his convictions.

*Id.*

On April 19, 2010, petitioner filed in the Superior Court a motion for post-

conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). The Superior Court summarily dismissed the motion, and petitioner did not appeal that decision. *See State v. Newton*, 2010 WL 8250757 (Del. Super. Ct. July 15, 2010).

Petitioner timely filed the instant habeas application in December 2010. The State filed an answer, contending that the application must be dismissed in its entirety. (D.I. 21)

Thereafter, in November 2011, petitioner filed in the Delaware Superior Court a motion for a new trial, which was dismissed without prejudice to his filing a proper Rule 61 motion. *State v. Newton*, 2011 WL 7144816 (Del. Super. Nov. 15, 2011). On January 6, 2012, petitioner filed his second Rule 61 motion, which the Superior Court summarily dismissed. *See State v. Newton*, 2012 WL 1415811 (Del. Super. Jan. 31, 2012). It does not appear that petitioner appealed that decision.

## III. GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

A federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). One prerequisite to federal habeas review is that a petitioner must exhaust all remedies available in the state courts. *See* 28 U.S.C. § 2254(b)(1). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir. 2000). A petitioner

2

satisfies the exhaustion requirement by "fairly presenting" the substance of the federal habeas claim to the state's highest court, either on direct appeal or in a post-conviction proceeding, and in a procedural manner permitting the state courts to consider it on the merits. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

A federal court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v*, 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the

3

errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence - -whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - - that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004).

## B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of

4

the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, __ U.S. __, 131 S.Ct. 770, 784-85 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

5

## IV. DISCUSSION

Petitioner's application and memorandum in support present the following four grounds for relief:[1] (1) petitioner is actually innocent of the crimes, because he and the victim were just staging a peaceful demonstration in protest of prison conditions; (2) the prosecutor engaged in misconduct for not compelling the victim to testify at trial and for "not correcting" the allegedly-perjured testimony of internal affairs investigator Jonathan Sines or providing any support for Sines' testimony; (3) the State committed a *Brady* violation by not testing blood present on a towel recovered from the scene of the crime; and (4) petitioner's due process rights were violated by the exclusion of a statement signed by Peterson but drafted by petitioner, which explained that the entire incident was a form of protest against prison conditions.

### A. Claim One: Actual Innocence

Claim one in the instant application asserts that petitioner is actually innocent of the crimes of conviction because the alleged kidnaping and subsequent standoff with prison guards was merely a peaceful demonstration coordinated by both petitioner and the victim to protest prison conditions. Although petitioner concedes that he did not raise a freestanding claim of actual innocence on direct appeal, he asserts that "each supporting fact [of actual innocence] was argued under separate grounds." (D.I. 1 at Ground One) Thus, he contends that the court should review the merits of claim one.

In its answer, the State contends that the court should dismiss claim one as procedurally defaulted, because petitioner failed to argue actual innocence on direct

---

[1]The court has combined into one claim (claim two) the two separate claims of prosecutorial misconduct set forth in the application (claims two and four).

appeal. Petitioner responds to the State's argument by asserting that the court's requirement to liberally construe a pro se petitioner's filings imposes a requirement to review the merits of claim one. However, petitioner also asserts that the State erred in characterizing his "actual innocence" claim as a "claim in and of itself, " and that an actual innocence claim is a "gateway through which a habeas petitioner must pass to have . . . otherwise barred constitutional claims considered on the merits." (D.I. 25, at 2)

The **only** claim identified by the State as being procedurally defaulted **is** petitioner's actual innocence claim; significantly, the Delaware Supreme Court adjudicated the merits of the other three claims presented in the instant application. Consequently, the court is somewhat puzzled by petitioner's contention that he did not raise the issue of his actual innocence as an independent claim in his habeas application but, rather, as a way to avoid procedural default on other claims. Nevertheless, because none of the other three claims raised in the application are procedurally defaulted, the court will view claim one as raising an independent "actual innocence" claim.

Having determined how to view claim one, the court begins by noting that neither the Supreme Court nor the Third Circuit Court of Appeals has ever held that a freestanding claim of actual innocence is cognizable on habeas review or that such a claim merits habeas relief. *See House v. Bell*, 126 S.Ct. 2064, 2087 (2006); *Sistrunk v. Rozum*, 674 F.3d 181, 187 n.2 (3d Cir. 2012). Thus, to the extent claim one asserts a freestanding claim of actual innocence, the court will deny it for failing to present a proper basis for federal habeas relief.

Moreover, even if claim one were cognizable on habeas review, the court would deny it as procedurally barred. Petitioner concedes that he failed to present his actual innocence argument on direct appeal. And, to the extent petitioner's first and second Rule 61 motions can be construed as raising such a claim, petitioner's failure to appeal the Superior Court's denial of those two motions to the Delaware Supreme Court means that he did not exhaust state remedies for the claim. At this juncture, Delaware Superior Court Criminal Rule 61(i)(1), (2) and (3) would bar petitioner from presenting these issues to the Delaware state courts in a new Rule 61 motion. *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453 (D. Del. 1998)(Rule 61(i)(2) bars any ground for relief that was not asserted in a prior proceeding); *Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because petitioner did not raise the claim in the proceedings leading to his conviction). Consequently, petitioner's "actual innocence" claim is procedurally defaulted, and the court cannot review its merits absent a showing of cause and prejudice, or that petitioner is actually innocent.

To the extent petitioner attempts to establish cause for his failure to raise claim one on direct appeal on the trial court's refusal to allow into evidence a document allegedly signed by Peterson indicating Peterson's consent to be held hostage by petitioner as a means of protesting prison conditions, the argument is unavailing. The Delaware Supreme Court explicitly held that the trial court properly refused to admit the document because, by refusing to testify himself and by failing to call any witnesses, there was no witness who could identify and authenticate the document to establish that it was what petitioner claimed it was. On habeas review, the court must accept as

8

correct the Delaware Supreme Court's interpretation and application of Delaware law. Therefore, the trial court's evidentiary ruling does not constitute cause for petitioner's default.

In the absence of cause, the court will not address the issue of prejudice. Accordingly, the court alternatively denies claim one as procedurally barred.

## B. Claim Two: Prosecutorial Misconduct

Petitioner's prosecutorial misconduct claim is two fold. First, he contends that the prosecutor violated his rights by not compelling Peterson, the victim, to testify. On direct appeal, the Delaware Supreme Court interpreted this argument as asserting that petitioner's confrontation clause rights were violated by the prosecutor's failure to compel Petersen to cooperate. The Delaware Supreme Court denied the argument as meritless because it was unsupported by the record and Peterson's failure to testify was in no way attributable to any action by the prosecutor. The Delaware Supreme Court also denied as meritless petitioner's argument that he was denied his "constitutional right to confront a witness against him because, in fact, Peterson offered no testimony against him." *Newton*, 2010 WL at 922727, at *2. The Delaware Supreme Court further opined that the

only out-of-court statement made by Peterson was admitted, without objection, through the testimony of a correctional official, Jonathan Sines, who testified that he had spoken to Peterson during the course of the hostage incident and Peterson had said to him, "You got to get me out of here . . . he cut me on my shoulder." This statement was properly admitted, regardless of Peterson's availability to testify, because it was an excited utterance. There was nothing improper about the prosecutor eliciting this statement from another witness even though Peterson himself did not testify.

*Id.*

9

The Delaware Supreme Court's denial of the instant prosecutorial

misconduct/confrontation clause argument does not warrant relief under § 2254(d). To

begin, the Delaware Supreme Court's conclusion that Peterson's refusal to testify was

in no way attributable to the prosecutor's actions constituted a reasonable

determination of the facts based on the evidence presented. As thoroughly explained

by the State in its answering brief in petitioner's direct appeal:

> The victim, Kalvin Peterson, had been subpoenaed by the State as a witness. At
> the time of trial, he remained in prison. Before trial, he had been interviewed by
> the police and the prosecutor and had been cooperative. Both the prosecutor
> and the defendant made reference to his anticipated testimony in opening
> statement. Defendant Newton told the jury that "through documentation and
> through cross-examination" of Peterson he would show that Peterson was his
> confederate in orchestrating a take hostage situation to draw attention to
> grievances they had with the Department of Correction.
>
> Peterson was called as the State's first witness. He was wholly uncooperative
> when the prosecutor questioned him about the hostage incident, claiming no
> memory of the incident itself, or of talking to police about it. Finally, Peterson
> unequivocally indicated that he would not answer questions pertinent to the
> case: "Do I got to do this? Like, I ain't, I ain't trying to keep doing this, and I really
> ain't got nothing to say."
>
> After excusing the jury, the trial judge addressed the witness and gave him a
> choice of testifying or being held in contempt of court. Peterson chose being
> held in contempt. The judge then found him in contempt and sentenced him to
> serve an additional six months in prison. The judge, however, directed that
> Peterson remain in the courthouse and appointed counsel to represent him.
>
> Later that same day, appointed counsel first reported that Peterson appeared
> willing to testify. After further consultation, however, counsel reported that
> Peterson continued in his request not to testify. The judge later instructed the
> jury to "disregard everything Peterson said. You are not to consider anything he
> said in connection with your deliberations and your verdict, you are to treat it as if
> he never appeared in this courtroom at all."

(D.I. 23, State's Ans. Br. in *Newton v. State*, No. 298,2009, at 7-8).

Moreover, although the Delaware Supreme Court did not specifically address petitioner's confrontation clause argument in ruling that Peterson's only out-of-court statement (to internal affairs investigator Sines) was properly admitted under the "excited utterance" exception to the hearsay rule, for the following reasons, the court cannot conclude that this decision was either contrary to, or an unreasonable application of, clearly established federal law.

In *Crawford v. Washington*, 541 US. 36 (2004), the Supreme Court held that the Confrontation Clause bars the admission of "testimonial statements of witnesses absent from trial," unless the witness is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Id.* at 59. As clearly articulated in *Davis v. Washington*, 547 U.S. 813, 823-4 (2006), *Crawford*'s prohibition "applies only to testimonial hearsay" that is admitted to establish the truth of the matter asserted in the statement. *Id.; see also Crawford*, 541 U.S. at 60 n.9. A testimonial statement is a statement that a reasonable person in the position of the declarant would objectively foresee might be used in the investigation or prosecution of a crime. *See United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005). Notably, there is no clearly established Supreme Court precedent categorically classifying excited utterances as testimonial or non-testimonial in nature. Rather, "a testimonial statement is inadmissible absent a showing that the declarant is unavailable and the defendant had a prior opportunity for cross-examination, regardless of whether the statement at issue falls within a firmly rooted hearsay exception or has a particularized guarantee of trustworthiness." *United States v. Hendricks*, 395 F.3d 173, 178-79 (3d Cir. 2005). Consequently, the threshold

question in every case is whether the challenged statement is testimonial and, if so, whether it was introduced to establish the truth of the matter asserted. *See Hinton*, 423 F.3d at 357 (3d Cir. 2005). If not, the Confrontation Clause has no application.

In this case, the court concludes that the statement Peterson made to Sines, the internal affairs investigator, while he (Peterson) was being held in petitioner's cell, clearly was not testimonial in nature. A reasonable person in Peterson's position, having been forcibly taken to another prisoner's cell, bound, gagged, held by knife-point, and actually cut by said knife, would not be thinking about the future prosecutorial use of his statement that he "just wanted to get out there." Accordingly, the court will deny this portion of claim two.

The court similarly rejects petitioner's next claim of prosecutorial misconduct. Petitioner argues that the prosecutor suborned perjury by eliciting, from Jonathan Sines (the internal affairs investigator), Peterson's statement that "You got to get me out of here. . . he cut me on my shoulder," because Sines never submitted a written report of the incident. Although not entirely clear, petitioner appears to believe that the prosecutor also withheld Sines' witness report, and that this fact somehow supports his argument that the prosecutor suborned perjury. After noting that petitioner did not object to this testimony at trial, the Delaware Supreme Court reviewed the instant argument for plain error, and denied it as factually unfounded. The Delaware Supreme Court specifically explained that "there simply is no evidence in this case that such a witness report existed." *Newton*, 2010 WL 922727, at *2.

The court accepts as correct the Delaware Supreme Court's factual determination that Sines did not prepare a contemporaneous witness report, because

12

petitioner has not offered any clear and convincing evidence to rebut the Delaware

Supreme Court's factual finding. If no such report existed, the prosecutor could not

have withheld it from petitioner. Following petitioner's convoluted argument to its

illogical conclusion, without any evidence that a witness report was held, there is no

evidence that the prosecutor suborned perjury. Therefore, the court concludes that the

Delaware Supreme Court's denial of the instant prosecutorial misconduct claim does

not warrant habeas relief.

### C. Claim Three: Brady Violation

In claim three, petitioner contends that the State violated *Brady v. Maryland,* 373

U.S. 83 (1963), by not testing blood found on a towel used by petitioner to cover

Peterson's head during the stand-off. The Delaware Supreme Court denied this

argument, ruling that it was petitioner's responsibility to request testing on the towel, not

the State's responsibility. *Newton*, 2010 WL 922727, at *2.

A federal due process claim based on the prosecution's withholding of evidence,

or failure to produce evidence, is governed by *Brady v. Maryland*, 373 U.S. 83 (1963).

A violation of *Brady* occurs when the government fails to disclose evidence materially

favorable to the accused, including both impeachment evidence and exculpatory

evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). In order to prevail on a

*Brady* claim, a petitioner must establish that: (1) the evidence at issue was favorable to

the accused, either because it was exculpatory or it had impeachment value: (2) the

prosecution suppressed the evidence, either willfully or inadvertently; and (3) the

evidence was material. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v.*

13

*Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004) (citing *Banks v. Dretke*, 540 U.S. 668 (2004)). A petitioner demonstrates materiality of the suppressed evidence by showing a "reasonable probability of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). In turn, "a reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.*

In this case, petitioner does not contend that the State suppressed the towel but, rather, that the State did not test the blood on the towel. The Delaware Supreme Court explicitly determined that the States fulfilled its constitutional duty to collect and preserve the towel. Petitioner has not presented any clear and convincing evidence in this proceeding to rebut the Delaware Supreme Court's conclusion that the towel was available for petitioner to test. Therefore, in these circumstances, the court concludes that the State court's denial of petitioner's *Brady* claim does not warrant relief under § 2254(d)(1).

### D. Claim Four: Due Process Violation

In his final claim, petitioner contends that his due process rights were violated when the Superior Court refused to admit into evidence a document that he drafted stating the incident was part of some elaborate "protest" against prison conditions. The Delaware Supreme Court denied this claim because there was no witness who could identify and authenticate the document, given Peterson's and petitioner's refusal to testify.

14

It is well-settled that the "[a]dmissibility of evidence is a state law issue,"[2] and "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." *Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3d Cir. 1997). Significantly, a "federal habeas court [] cannot decide whether the evidence in question was properly allowed [or excluded] under the state law of evidence. A federal habeas court is limited to deciding whether the admission [or exclusion] of the evidence rose to the level of a due process violation." *Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001).

In this case, petitioner has failed to demonstrate that the trial court's alleged evidentiary error was so pervasive as to have denied him a fundamentally fair trial. Petitioner could have testified at trial to present his "story" and to "authenticate" the document, but he opted not to do so. Consequently, as the Superior Court explained, "the State's case was virtually unrefuted." *Newton*, 2010 WL 8250757, at *1. The State presented numerous witnesses to the incident who described Peterson as a terrified hostage, and "the evidence presented to the jury left no room for reasonable doubt about defendant's guilt." *Id.* at *2. In these circumstances, the court concludes that claim four does not warrant habeas relief.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* 3d Cir. L.A.R. 22.2 (2011). The court may issue a certificate of appealability only when a petitioner makes a "substantial showing of the denial of a constitutional right." 28

---

[2]*Wilson v. Vaughn*, 533 F.3d 208, 213 (3d Cir. 2008).

15

U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner's habeas application must be denied. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For foregoing reasons, the court will deny petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254.

An appropriate order will be entered.